IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN ORSON CHARLES DEY BEY,  :
           :
      Plaintiff,  :  CIVIL ACTION NO. 23-920
           :
  v.         :
           :
FIDELITY INVESTMENT LLC,  :
a/k/a FIDELITY BROKERAGE  :
SERVICES, LLC,      :
           :
      Defendant.  :

## MEMORANDUM OPINION

Smith, J.                  March 14, 2023

In our federalist system of government, we have legislative bodies to make the laws, executive bodies to enforce the laws, and judicial bodies to interpret the laws and resolve disputes under or over those laws. Sadly, we also have individuals outside of those bodies who believe that they can create their own law or interpretations of existing law, even if these made-up laws or interpretations exist outside the boundaries of reality. These individuals also believe that these self-created laws and interpretations allow them to not have to follow the federal, state, and local laws that would otherwise apply to them. Yet, these individuals often end up appearing before a court seeking to validate these self-created laws and interpretations by asking the court to give them something (generally, when their made-up laws or interpretations of the law favor them) or get out of something (generally, when the applicable law disfavors them). When these individuals ask the court to do this, they almost always lose.

In this case, this court is presented with an individual and an entity that purportedly conducts arbitrations who attempted to contort the law for their unlawful purpose. More specifically, the *pro se* plaintiff here claims that he deposited certain bonds with the defendant

financial institution and, despite the defendant informing him that it would not deposit his bonds, allegedly lied to him, and traded upon those bonds without compensating him. Via a purported arbitration provision in a customer agreement the plaintiff allegedly had with the defendant, he sought arbitration with an entity called American Arbitration Management Services, which is in Chicago. After a video arbitration hearing in which the defendant did not appear, the arbitrator from American Arbitration Management Services awarded the plaintiff $50 billion in "gold or lawful currency" and any proceeds the defendant received from trading on his bonds.

Having obtained this purported $50 billion-plus arbitration award, the plaintiff filed a motion to confirm the arbitration award in the Court of Common Pleas of Lehigh County, where he sought $100 billion which constituted his $50 billion award and his estimation that the defendant received another $50 billion in proceeds by trading on his bonds. After receiving notice of the plaintiff's motion, the defendant promptly removed the case here pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332(a).

Although the court has diversity jurisdiction to hear this motion to confirm the purported $50 billion arbitration award, the court will order the plaintiff to show cause why the court should not deny the motion and vacate the arbitration award because (1) there is no valid agreement to arbitrate and (2) no valid arbitration hearing occurred. As to the former, to warrant confirmation of an arbitration award, there must first be a valid agreement to arbitrate. While there appears to be a section of the parties' alleged agreement providing for arbitration, this section has been altered to serve the interests of the American Arbitration Management Services and the plaintiff, and it does not appear that the defendant manifested assent to those altered terms. Concerning the latter, the documents attached to the motion do not demonstrate that the American Arbitration Management Services is anything other than an entity conspiring with individuals like the plaintiff

2

to commit fraud in the hope of receiving some sort of financial benefit. Accordingly, unless the plaintiff can show that there was a valid agreement to arbitrate and that the American Arbitration Management Services is a valid arbitration entity, the court will deny the motion to confirm the purported arbitration award and vacate the award.

## I.     PROCEDURAL HISTORY

This action began when the *pro se* plaintiff, Kevin Orson Charles Dey Bey ("Bey"), filed a "Motion Confirming Arbitration Award" (the "Motion") in the Court of Common Pleas of Lehigh County on February 22, 2023.[1] *See* Doc. No. 1-2. In the motion, Bey asserts that the defendant, "Fidelity Investment LLC, et al., [a/k/a] Fidelity Brokerage Services, LLC" ("Fidelity")

> purposely damaged and destroyed . . . [his] property in the valued awarded amount
> that was estimated at previously "present" date that of February 2023 totaling in 50

---

[1] Under the Pennsylvania Rules of Civil Procedure, "any party may file a motion to confirm an arbitration award which was entered by an arbitrator" in only three scenarios. *See* Pa. R. Civ. P. 1327. The first scenario is where "the party against whom [the] arbitration award is sought to be confirmed . . . attended a hearing before the arbitrator[.]" *Id.* The second scenario is where "the party against whom [the] arbitration award is sought to be confirmed . . . signed a writing after the claim that is the basis for the arbitration award was filed with the arbitrator, agreeing to submit the claim to the arbitrator[.]" *Id.* The final scenario is where "the arbitration award was entered following a court order or docket entry staying proceedings pending arbitration as provided by Rule 1329." *Id.*

If an arbitration award was entered under the first scenario, the party may file the motion to confirm the arbitration award as an original proceeding. *See* Pa. R. Civ. P. 1328(a). To ensure that the motion is being properly brought as an original proceeding, it must "contain factual allegations establishing that the arbitration award was entered pursuant to" the first scenario. Pa. R. Civ. P. 1328(c). In addition, to ensure the opposing party understands that the motion is proceeding as if it was an original proceeding, the moving party must include a notice in the form required in Rule 1331 of the Pennsylvania Rules of Civil Procedure. *See* Pa. R. Civ. P. 1328(b). Rule 1331's notice states in relevant part as follows:

**Notice to File Answer**

A party to these proceedings has filed a motion to confirm an arbitration award. If you oppose the motion, you are required to file an answer to the motion within thirty (30) days from the date below setting forth your objections to the motion. If you fail to file an answer, a money judgment based on the arbitration award may be entered against you without further notice. You may lose money or property or other rights important to you.
YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Pa. R. Civ. P. 1331.

(Fifty) Billion payable in Gold or Lawful currency (dollars) and additional award of all proceeds from the CUSIP numbers estimated value to be $50 (Fifty) Billion payable in Gold or Lawful currency (dollars) for a total of $100 (Hundred) Billion payable in Gold or Lawful currency (dollars)[.]

Mot. Confirming Arb. Award ("Mot.") at ECF p. 5, Doc. No. 1-2.[2] Essentially, Bey is seeking to have a court confirm an arbitration award against Fidelity for $100 billion. *See id.*

In support of the Motion, Bey attaches a series of documents that greatly concern this court. The first attachment is a "Fidelity Account Customer Agreement[]," which appears to be at least part of an actual standard form agreement.[3] *See id.* at pp. 6–25. The second attachment is a purported official document from the "Morocco Consular Court at the Maryland state republic," which appears to state that a "FINAL ARBITRATION AWARD" dated December 16, 2021, is a true and correct copy which was transmitted to Bey on March 4, 2022.[4] *See id.* at ECF p. 26. The third attachment is a quasi-certificate of service, which states that "Ariel Kingston" ("Kingston") mailed the "FINAL ARBITRATION AWARD" by USPS certified mail/return receipt to Bey and Fidelity on December 16, 2021. *See id.* at ECF p. 27.

The fourth attachment is a series of documents which appear to relate to the purported arbitration award. *See id.* at ECF pp. 28–34. These documents reveal that Kingston, who lives in

---

[2] According to the United States Securities and Exchange Commission's website:

> CUSIP stands for Committee on Uniform Securities Identification Procedures. A CUSIP number identifies most financial instruments, including: stocks of all registered U.S. and Canadian companies, commercial paper, and U.S. government and municipal bonds. The CUSIP system (formally known as CUSIP Global Services)—owned by the American Bankers Association and managed by Standard & Poor's Global Market Intelligence—helps facilitates the clearance and settlement process of securities.

https://www.investor.gov/introduction-investing/investing-basics/glossary/cusip-number (last visited March 13, 2023).

[3] The only indication that the attached agreement is between Bey and Fidelity is that Bey appears to have typed his name on the top of the first page and then appears to have signed and dated each page. *See* Mot. at ECF pp. 6–25.

[4] This document purports to be an official document because it contains the "seal of the Vizir of Morocco Consular Court at the Maryland state republic." Mot. at ECF p. 26. In addition, the seal appears to have been placed on the document by "Adeel Zakat Saeed Bey, Vice Consul and Vizir Morocco Consular Court at the Maryland state republic." *Id.*

Chicago, Illinois, apparently acted as the arbitrator presiding over the arbitration hearing purportedly involving Bey and Fidelity via video conference on December 14, 2021, at 11:00 a.m. *See id.* at ECF p. 28. Bey and Kingston were the only participants in the hearing, which allegedly related to a dispute over Bey's Fidelity account customer agreement pertaining to account no. Z19638996. *See id.*

As for this dispute, one page in the arbitration award documents purports to detail the "nature of [the] dispute" as follows:

> In July of 2021 Kevin Orson Charles Dey Bey (Claimant) was directed to take his 1913 Reorganization Gold Loan Bearer Bond and a 1930 $1000 German Government International Gold Bearer Bond and deposit them at a local FIDELITY INVESTMENTS, LLC branch. This correspondence was made via email to Claimant by a Representative of FIDELITY INVESTMENTS, LLC aka [sic] FIDELITY BROKERAGE SERVICES, LLC (Respondents). Claimant, who had a brokerage account with the Respondents, did deposit the bonds with the Respondents as he was directed to do. After almost 3 months of Claimant calling and inquiring on the progress of the bonds he deposited with the Respondent(s), FIDELITY INVESTMENTS, LLC et al [sic], Claimant was told by FIDELITY INVESTMENTS, LLC et al [sic] that they were not able to deposit the bonds and the bonds were returned to Claimant by UPS mail. When Claimant opened the sealed package he discovered the Bonds FIDELITY INVESTMENTS, LLC et al [sic] returned were shredded and damaged. When Claimant inquired as to what happened to his bonds Respondents, FIDELITY INVESTMENTS, LLC et al [sic] told Claimant the bonds were damaged during delivery. Claimant was suspicious of FIDELITY INVESTMENTS, LLC et al [sic] response and Kevin Orson Charles Dey Bey hired a broker to trace the bonds and discovered that FIDELITY INVESTMENTS, LLC et al [sic] did in fact apply a CUSIP to the bonds and are currently trading upon the bonds and have not compensated him for his bonds.

*Id.* at ECF p. 30.

Another page in the arbitration award documents contains a quote from United States Supreme Court Justice Brett M. Kavanaugh in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), where the Court addressed whether an arbitrator could resolve the question of a dispute's arbitrability if the parties' agreement delegates the authority to determine arbitrability to the arbitrator. *See id.* at ECF p. 29 (quoting Justice Kavanaugh). After reciting this

quote from Justice Kavanaugh, there is an incomplete[5] set of "Facts Regarding this Arbitration

Hearing," which state as follows:

> a) There is a matter in dispute and an application to [the American Arbitration Management Services ("AAMS")] for an alternative dispute resolution, brought forth by Claimant, Kevin Orson Charles Dey Bey. A written agreement to arbitration [sic] is on the record of the related matter and all parties were notified to submit evidence and attend an arbitration hearing. By tacit acquiescence, the Respondents agreed to the terms set forth by the Claimant.
>
> b) A hearing was held on Tuesday [sic] December 14, 2021 @ 11am CST. [sic] via Telephone/Video Recording. * A copy of the video recorded hearing is permanently attached to this Final Arbitration Award via electronic media.
>
> c) All Respondents (and representatives) failed to appear. There were no requests made for a continuance.
>
> d) The Respondents and Claimant had nexus by contract with terms and conditions in the Respondents' favor.
>
> e) A Signed Change in terms and conditions regarding fidelity account customer agreements of Kevin Orson Charles Dey Bey was offered by Claimant and the Respondents had an obligation to respond under commercial contract law.
>
> f) All Respondents have been unresponsive to Notice of Intent to arbitrate, all of which were presented to the Respondents under Notary Presentment.
>
> g) Respondents defaulted by their tacit acquiescence, positioning the terms and conditions in favor of the Claimant. Respondents thus agreed to arbitration.
>
> h) AAMS noticed the Respondents of the scheduled arbitration hearing and all documents . . . .

*Id.* (emphasis omitted).

The arbitration award documents also contain the "FINDINGS & AWARD OF THE

ARBITRATOR," which were:

> *Considering the Claimants' Change in terms and conditions regarding fidelity [sic] account customer agreements* [sic] *of Kevin Orson Charles Dey Bey, the Respondents' dishonor by tacit acquiescence and their lack of honor in this matter, the Arbitrator finds in favor of the Claimant Kevin Orson Charles Dey Bey.*

---

[5] The final part of the "Facts," is cut off. *See* Mot. at ECF p. 29.

i) **This Arbitrator finds** FIDELITY INVESTMENTS, LLC aka FIDELITY BROKERAGE SERVICES, LLC have joint and several liability to the damage perpetrated on Claimant Kevin Orson Charles Dey Bey.

i) [sic] **The Arbitrator awards** Claimant, Kevin Orson Charles Dey Bey; Fifty Billion in Gold/Lawful Currency from Respondents FIDELITY INVESTMENTS, LLC et al.

ii) **The Arbitrator awards** Claimant, Kevin Orson Charles Dey Bey; and due to the Egregious [sic] nature of FIDELITY INVESTMENTS, LLC et al [sic] offenses against the Claimant, Kevin Orson Charles Dey Bey is further awarded all proceeds derived from CUSIP(s) FIDELITY INVESTMENTS, LLC et al [sic] received.

**\*\*Respondent(s) have a duty to immediately deliver to Claimant: the awards.**

**\*\*This Award is LEGALLY BINDING UPON ALL PARTIES AND IS IMMEDIATELY ENFORCEABLE[.]**

*Id.* at ECF p. 31.

In an apparent effort to finalize this purported award, Kingston indicates that they and AAMS complied with "Title 5 § 572,"[6] and she states that "[t]his Final Award is protected by Federal Rule of Civil Procedure 61. Harmless Error and so awarded." *Id.* at ECF p. 32. Kingston also informs the parties that they can seek review of the award via an "Appeal in Remonstrance to the legislature." *Id.* Kingston further certifies that, by "virtue of the authority vested in [her] by the Federal Arbitration Act," Kingston "executed the attached Arbitration Award . . . as [a] duly qualified Arbitrator for American Arbitration Management Services whose official acts . . . should be given full faith and credit in all Courts and Justice and elsewhere." *Id.* at ECF p. 34.

The fifth attachment to the motion is a certified copy of documents Bey filed in an action in the United States District Court for the Middle District of Pennsylvania captioned, *Bey v.*

---

[6] The court presumes that Kingston is referencing 5 U.S.C. § 572, which pertains to alternative dispute resolution in administrative programs. It is unclear why Kingston and AAMS believe this statute applies to AAMS's arbitration award.

*Fidelity Investments LLC, et al.*, Misc. No. 1:22-466-UM. *See id.* at ECF pp. 35–59.[7] The sixth, and final group attachment, is a series of documents which appear to relate to notice of the purported arbitration hearing being served upon Bey and Fidelity. *See id.* at ECF pp. 60–63.

According to Fidelity, Bey "purportedly served" it with the Motion on or about February 28, 2023. *See* Notice of Removal at ¶ 3, Doc. No. 1. On March 9, 2023, Fidelity removed the matter from the Court of Common Pleas to this court by invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. *See id.* at ¶¶ 5, 7–12.

## II.    DISCUSSION

This case presents yet another example of what appears to be a growing movement of individuals who create their own illogical interpretations of existing law and then attempt to exploit the court system to attempt to enforce those interpretations. There is a slightly different wrinkle insofar as it not only involves an individual who has cut a claim out of whole cloth, but there is also a purported entity to help facilitate the individual's fictitious claim by creating an arbitration award based on the same made-up legal interpretations, which the individual is now attempting to enforce.

Here, Bey purports to have delivered certain bonds to Fidelity and, when Fidelity unsurprisingly stated that it could not deposit the bonds, allegedly returned them to Bey in damaged condition. *See* Mot. at ECF p. 30. Bey became suspicious of Fidelity's representation, and he hired a broker to trace the bonds. *See id.* Bey's broker purported discovered that Fidelity applied for a CUSIP and was trading upon the bonds, yet it had not compensated him for the bonds. *See id.* Bey then sprang into action. Via a purported arbitration provision in a customer agreement Bey claims

---

[7] The court reviewed the Middle District's docket and confirmed that these documents were filed in that action. In fact, as a group, they represent the only document filed in the action, which was commenced on May 23, 2022. While it is unclear, it appears that this action may still be pending.

to have had with Fidelity, he took his dispute before AAMS and, in a single day, obtained a $50 billion dollar arbitration award (plus any proceeds Fidelity made from trading on Bey's bonds) against Fidelity. *See id.* at ECF p. 31. Bey now attempts to exploit the court system to obtain an incomprehensible $100 billion dollar award (which includes Bey's estimation of $50 billion in proceeds Fidelity received from trading on his bonds) against Fidelity. This court will not be complicit in Bey's attempt to manipulate the judicial system.

## A.     Jurisdiction Over the Motion

The court will first examine whether there is subject-matter jurisdiction over this removed action.[8] As a preliminary matter, and despite Bey's assertion to the contrary, the Motion should not have been accepted as an "original proceeding" to confirm an arbitration award under Pennsylvania law. *See* Pa. R. Civ. P. 1328(a) (indicating which motions to confirm arbitration awards may be filed as original proceedings). In this regard, a party may only file a motion to confirm an arbitration award as an original proceeding "if the arbitration award was entered pursuant to Rule 1327(1)." *Id.* An arbitration award is entered pursuant to Rule 1327(1) if "the party against whom an arbitration award is sought to be confirmed either (i) attended a hearing before the arbitrator, or (ii) signed a writing after the claim that is the basis for the arbitration award was filed with the arbitrator, agreeing to submit the claim to the arbitrator[.]" Pa. R. Civ. P. 1327(1). Here, Fidelity is the party against whom Bey is attempting to confirm his purported arbitration award, and there is nothing in the Motion reflecting that Fidelity (1) attended the video hearing before Kingston or (2) signed a writing after Bey's claim was filed with the AAMS in

---

[8] The court can raise issues concerning the court's subject-matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999) (explaining that courts have independent obligation to determine whether subject-matter jurisdiction exists, even in absence of challenge from any party); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. A necessary corollary is that the court can raise *sua sponte* subject-matter jurisdiction concerns." (internal citation omitted)).

which it agreed to submit the claim to the AAMS. To the contrary, Kingston acknowledged that Fidelity did not appear for the arbitration hearing and did not sign a writing agreeing to submit Bey's claim to the AAMS. *See* Mot. at ECF p. 29 (indicating that "[b]y *tacit acquiescence*, [Fidelity] agreed to the terms set forth by [Bey]" and Fidelity "(and [its] representatives) failed to appear [for the arbitration]").[9] Therefore, the Motion is not an "original proceeding" under Rule 1328(a).

Even though the Motion is not an "original proceeding" under the Pennsylvania Rules of Civil Procedure, the court will presume that the Motion was properly removable because this court has jurisdiction over petitions to confirm arbitration awards under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA").[10] As for those petitions, the FAA generally permits applications to confirm arbitration awards to be filed in a federal district court:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

9 U.S.C. § 9.[11]

---

[9] "Tacit" is defined as "[i]mplied but not actually expressed; implied by silence or silent acquiescence[.]" Tacit, Black's Law Dictionary (11th ed. 2019). "Acquiescence" is defined as "[a] person's tacit acceptance; implied consent to an act." Acquiescence, Black's Law Dictionary (11th ed. 2019).

[10] The FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.

[11] If this application was filed in a federal district court in the first instance, it would have to include:

> (a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award[;]
> (b) The award[; and]

Although the FAA gives federal district courts the authority to address applications to confirm arbitration awards, there must be an independent basis for jurisdiction because the FAA does not confer federal jurisdiction over such applications. *See Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) ("As for jurisdiction over controversies touching arbitration, however, the [FAA] is something of an anomaly in the realm of federal legislation: It bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis over the parties' dispute." (all alterations except first alteration in original) (citation and internal quotation marks omitted)). Here, the independent jurisdictional basis offered by Fidelity is the court's diversity jurisdiction under 28 U.S.C. § 1332(a).[12] *See* Notice of Removal at ¶¶ 5, 7–12, Doc. No. 1.

Section 1332(a) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States . . . ." 28 U.S.C. § 1332(a). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted))). For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present

---

(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

9 U.S.C. § 13.

[12] "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011)

("[D]omicile is established by an objective physical presence in the state or territory coupled with

a subjective intention to remain there indefinitely." (citation omitted)). As for limited liability

companies, "the citizenship of an [limited liability company] is determined by the citizenship of

each of its members." *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 418.

Fidelity has satisfied its burden that the court has subject-matter jurisdiction over this action

under section 1332(a). As it points out in the notice of removal, there is complete diversity because

Bey appears to be a citizen of the Commonwealth of Pennsylvania and it is a citizen of

Massachusetts. *See* Notice of Removal at ¶¶ 7–9. In addition, as Bey is seeking $100 billion,

section 1332(a)'s $75,000 amount-in-controversy requirement is easily met. *See id.* at ¶ 11. Thus,

the court has diversity jurisdiction over this action seeking to confirm an arbitration award.

## B.    Analysis of the Motion

Even though the court has subject-matter jurisdiction over the Motion, the court seemingly

should not confirm the arbitration award because (1) there is no valid agreement to arbitrate and

(2) the documents relating to the arbitration award show that it is implausible that the AAMS is a

valid arbitration entity.[13] As to the agreement to arbitrate, for this court to confirm an arbitration

---

[13] Although the court technically has subject-matter jurisdiction under the diversity statute, it is unclear upon which basis the court should deny the Motion. As already indicated, this is not an "original proceeding" to confirm an arbitration award under the Pennsylvania Rules of Civil Procedure, and it appears Pennsylvania law also treats the Motion as a motion or application. *See* 42 Pa. C.S. § 7321.23 ("After a party to an arbitration proceeding receives notice of an award, the party must make a motion to the court for an order confirming the award."); 42 Pa. C.S. § 7342 (b) ("On application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration), the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order."). Similarly, the FAA directs that the court should treat the Motion as a motion (and, presumably, not a pleading). *See* 9 U.S.C. § 6. Therefore, it appears that the court can proceed to treat the Motion as a motion under the FAA and Pennsylvania law.

   Nevertheless, in an abundance of caution, the court would be remiss not to mention that

   [t]he Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for lack of jurisdiction due to merits-related defects in only narrow categories of cases. "[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where

award, it must first determine "whether the parties entered into a valid agreement to arbitrate." *Hill v. Bank of Am.*, No. 4:20-cv-171-RGE-CFB, 2020 WL 5870425, at *3 (S.D. Iowa Aug. 20, 2020) (citing *PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1253–54 (8th Cir. 1998)). A district court cannot confirm an arbitration award if the party seeking confirmation "fail[s] to make any colorable showing of a valid agreement to arbitrate in the first place." *Bozek v. PNC Bank*, No. 20-3515, 2021 WL 4240359, at *2 (3d Cir. Sept. 17, 2021) (per curiam) (citing 9 U.S.C. § 13(a)).

While the court recognizes that in most instances, this lack of a colorable showing relates to the applicant failing to attach a copy of the purported arbitration agreement to the application to confirm the award in the first instance, the principle must apply equally here, where it is apparent

---

such a claim is wholly insubstantial and frivolous." [*Bell v. Hood*, 327 U.S. 678, 682–83 (2016).] "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" [*Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)] (quoting *Oneida Indian Nation v. Cty. of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

*Davis v. Wells Fargo*, 824 F.3d 333, 349–50 (3d Cir. 2016). Thus, if "a complaint is 'obviously frivolous' the district court may dismiss the complaint, even if the plaintiff has paid the filing fee." *Wallace v. Lynch*, No. 2:20-cv-2265 TLN DB PS, 2021 WL 2016620, at *1 (E.D. Cal. May 20, 2021) (citations omitted); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances.").

As explained *infra*, the Motion is frivolous, which would appear to impact this court's subject-matter jurisdiction despite the presence of diversity jurisdiction. Nevertheless, the Honorable Richard Allen Posner of the Seventh Circuit Court of Appeals, now retired, has explained the differences between a frivolous claim brought under a district court's federal-question jurisdiction and one brought under a district court's diversity jurisdiction:

[I]f there was diversity jurisdiction but the claim asserted was frivolous the case should have been dismissed with prejudice. When a case of which the court has jurisdiction is dismissed because it fails to state a claim (which a frivolous suit obviously fails to do), the dismissal is a merits determination and is therefore with prejudice. The difference between a federal-question case that is frivolous and a diversity case that is frivolous is that the latter case but not the former is within federal jurisdiction, because a substantial claim is not a condition of diversity jurisdiction.

*El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). Therefore, as there is diversity jurisdiction in this case, it is potentially possible that this court should consider the frivolous nature of the motion under the principles applicable to motions to dismiss for the failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. If the court must do so, the court notes that "[a] district court is empowered to dismiss a complaint *sua sponte* under Rule 12(b)(6), even as to non-moving defendants, so long as the plaintiff has notice and an opportunity to respond." *Mann v. A.O. Smith Corp.*, No. 21-2361, 2023 WL 2344225, at *3 (3d Cir. Mar. 3, 2023) (citations omitted).

there is no valid agreement to arbitrate under the FAA or Pennsylvania law despite the plaintiff

attaching a purported arbitration agreement. To determine whether a valid agreement to arbitrate

a dispute exists,

> [the court] look[s] to the relevant principles of state contract law. *See Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017); *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa. Super. Ct. 2005). Under Pennsylvania law, a valid contract is formed where, among other things, there is mutual agreement between the parties. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). "[I]n determining whether parties have agreed to arbitrate, courts should ... adopt[ ] an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties." *Quiles*, 879 A.2d at 287 (internal quotation marks and citation omitted). "[N]o party can be forced to arbitrate unless that party has entered an agreement to do so." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993) (internal quotation marks and citation omitted).

*Bozek*, 2021 WL 4240359, at *2 (all alterations except first and second alterations in original).

The purported agreement at issue here is the customer agreement Bey attached to the

Motion. *See* Mot. at ECF pp. 6–25. The agreement is a preprinted, form agreement, and it has

arbitration provisions on the second-to-last page of the attached agreement. *See id.* at ECF p. 24.

While a cursory glance at this second-to-last page would appear to show the terms of the arbitration

agreement between the parties, it is painfully obvious that the arbitration language has been altered

to benefit Bey and AAMS despite the care that someone used to attempt to make this look as

authentic as possible.

There are several aspects of the arbitration provisions which demonstrate that they have

been altered to benefit Bey and AAMS and facilitate what Bey is doing in this case. The first

indication that the arbitration provisions have been altered is the numerous typographical errors

and other inconsistencies. Examples of typographical errors include, *inter alia*: (1) two periods

next to each other in paragraph F in the left-most column; (2) a reference to the location of AAMS

being in "Chicago [sic] Illinois";[14] (3) a provision stating that "[a]ll ***Parties*** [sic] relinquish ***there*** [sic] right to file suit against any named party";[15] (4) a provision stating that "***Arbitrator*** [sic] will make the decision regarding the validity of the ***contract*** and the outcome of the dispute brought before them";[16] (5) a provision stating that "[y]ou understand that the ***arbitrators judgement*** [sic] upon any arbitration award may be entered in any court of any competent jurisdiction ***Pursuant*** [sic] to **9 USC 1-16** [sic]."[17] *Id.* (emphasis added).

While these typographical errors alone could be indicative of nothing other than poor drafting on Fidelity's part, the purported arbitration provisions provide indicia of alteration. The first indication starts with the left column of the page starting at paragraph E. Contrary to the rest of the approximately 20 pages of the agreement, where Bey was referred to as "you," "your," or "account holder," *id.* at ECF p. 6, paragraph E states: "***My*** signature deems this to be a binding lawful written agreement." *Id.* at ECF p. 24 (emphasis added). The second indication immediately follows paragraph E, insofar as the first line of paragraph F partially overwrites the last line of paragraph E.[18] *See id.* The third indication is paragraph F itself, as it states: "Henry Schein, Inc. v. Archer & White Sales, Inc. 17-1272, 'An arbitrator should decide whether a dispute is subject to

---

[14] For Bey and AAMS's edification, there should be a comma between Chicago and Illinois.

[15] The word "parties" is not capitalized when it is not the first word of a sentence throughout the non-altered portions of the agreement. Also, when Bey or AAMS is using a possessive form of "they," the word they should use is "their." *See* How to Use They're, There, and Their, Merriam-Webster Online, https://www.merriam-webster.com/words-at-play/how-to-use-theyre-there-their (last visited March 13, 2023).

[16] It is very doubtful that Fidelity would start this sentence without the direct article, "The." In addition, at no point in the agreement does Fidelity refer to the agreement as the "contract," yet does so here, and it seems highly unlikely that Fidelity would be indicating that the arbitrator would be deciding if the arbitration agreement was valid (even if that were what would happen during the arbitration hearing) because it is Fidelity's standard form agreement.

[17] The word "arbitrators" is meant to be possessive in this sentence and, as such, should have been spelled "arbitrator's." Also, the word "judgement" does not contain an "e" in the United States' version of English. *See* Judgment, Black's Law Dictionary (11th ed. 2019) (spelling "judgment" without e). Moreover, there is no reference to the FAA by name, and yet there is a citation to "9 USC 1-16," which lacks periods and section symbols. Further, even if it was correctly spelled, an "arbitrator's judgment" does not exist in the law. Instead, this segment could provide that judgment upon any arbitration award may be entered in any court of competent jurisdiction. Finally, it is unclear what the purpose of the second "any" is in "any court of any competent jurisdiction."

[18] This overwriting would be indicative of an individual using a PDF editor to alter text and placing part of one text box on top of another.

arbitration.. [sic]' Justice Brett Kavanaugh[.]" This reference is telling because on one of the pages of the arbitration award, AAMS quotes Justice Kavanaugh in the same case. *See id.* at ECF p. 29. The final indication is the provision that "[t]he findings of the arbitrator will be immediately enforceable." *Id.* at ECF p. 24. Not only is this incorrect legally, but the immediate enforceability of an arbitrator's award would negate the need for a party such as Bey to obtain a judgment from the court to enforce the arbitration award.

Since it is apparent that the attached agreement is not Fidelity's standard customer agreement, and instead was altered by Bey or someone else at his request, there must be some indication that Fidelity accepted the alterations. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (explaining that when determining whether there is valid agreement to arbitrate under Pennsylvania law, "court must 'look to: (1) ***whether both parties manifested an intention to be bound by the agreement***; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.'" (emphasis added) (quoting *ATACS Corp. v. Trans World Comm'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998))). Bey does not allege in the Motion that Fidelity expressly accepted the alterations, and there is no indication on the face of the purported customer agreement that Fidelity expressly agreed to arbitrate any dispute with AAMS serving as the arbitrator. In fact, the only signature on the altered agreement is Bey's signature. *See* Mot. at ECF pp. 6–25.

Bey and AAMS appear to recognize the lack of an affirmative manifestation of assent to arbitrate by Fidelity because they appear to base the validity of the arbitration proceedings and award on Fidelity's "tacit acquiescence" to arbitrate with Bey. In this regard, the portion of the arbitration decision reciting the "Facts Regarding this Arbitration Hearing" indicates:

> d) [Fidelity] and [Bey] had nexus by contract with terms and conditions in [Fidelity's] favor.

e) A Signed Change in terms and conditions regarding fidelity account customer agreements of . . . Bey was offered by [Bey] and Fidelity had an obligation to respond under commercial contract law.

f) [Fidelity] ha[s] been unresponsive to Notice [sic] of Intent to arbitrate, all of which were presented to [Fidelity] under Notary Presentment.

g) [Fidelity] defaulted by their tacit acquiescence, positioning the terms and conditions in favor of [Bey]. [Fidelity] thus agreed to arbitration.

*Id.* at ECF p. 29. These purported factual findings indicate that Bey (1) altered the terms of Fidelity's customer agreement and allegedly sent his alterations to Fidelity, (2) Fidelity did not respond to Bey, and (3) both Bey and AAMS treated Fidelity's lack of response as its "tacit acquiescence" to arbitration with AAMS. *See id.*

This "tacit acquiescence" argument is undeniably insufficient to establish a party's assent to arbitrate, as the Third Circuit Court of Appeals recognized in *Bozek v. PNC Bank*, No. 20-3515, 2021 WL 4240359 (3d Cir. Sept. 17, 2021) ("*Bozek II*"), a case which is very similar to the instant case. In *Bozek*, the *pro se* plaintiff attempted to resolve a mortgage foreclosure action with the defendants by sending them a demand letter, which

appear[ed] to seek an alternative resolution to the foreclosure action and request[] certain information from the defendants. The letter purported to mandate arbitration in the event that the defendants declined to provide the requested information or failed to respond. The letter also stated that the defendants' failure to respond would result in their "tacit acquiescence" to its terms.

2021 WL 4240359, at *1 (citations to record omitted). The defendants never responded to the demand letter, and the plaintiff's home was later sold at a foreclosure sale, and he was evicted from the premises. *See id.*

A couple of months after the sale of the house, the plaintiff filed a petition to confirm an arbitration award in the Court of Common Pleas of Bucks County. *See id.* In the petition, the plaintiff claimed to have participated in an arbitration hearing before "Dalwickman Arbitration

Services" approximately two-and-a-half months after he sent his demand letter to the defendants. *Id.* The plaintiff claimed that the defendants were notified of the arbitration but failed to attend. *See id.* The arbitrator issued a "purported" award totaling approximately $3.4 million in favor of the plaintiff. *Id.* In his motion to confirm this arbitration award, the plaintiff not only sought to enforce the $3.4 million award but sought punitive damages as well. *See id.*

The defendants removed the case to this federal district court, and they then moved to dismiss the petition for the failure to state a claim because the plaintiff "attempt[ed] to enforce a fraudulent arbitration award" and had "relied on a 'sham document to create the appearance of an arbitration agreement, when no such agreement exists." *See id.* The Honorable John M. Younge granted the motion to dismiss and vacated the arbitration award after (1) determining that the plaintiff "had failed to demonstrate that the parties had agreed to arbitration as required under both the Federal Arbitration Act ("FAA") and state law governing the confirmation of arbitration awards" and (2) concluding that the plaintiff "had attempted to form a unilateral contract that was not binding on the defendants."[19] *Id.*

The plaintiff appealed from Judge Younge's decision to the Third Circuit, which ultimately agreed with Judge Younge. In affirming Judge Younge's decision, the Third Circuit explained that

> the District Court was unable to confirm the award—because [the plaintiff] failed to make any colorable showing of a valid agreement to arbitrate in the first place. See 9 U.S.C. § 13(a) (requiring a petitioner seeking confirmation of an arbitration

---

[19] More specifically, Judge Younge explained that

> Plaintiff's attempt to form what amounts to a unilateral contract to arbitrate claims fails to meet any of the basic requirement for contract formation. First and foremost, Plaintiff is completely unable to establish mutual assent to be bound by the Demand Letter and related correspondences. He fails to aver that any agreement was actually negotiated with Defendants or that Defendants accepted the terms of the agreement. He fails to identify any individual agent or agents of Defendants who bound them to the purported agreement. Plaintiff does not even attempt to aver that the Demand Letter was signed or discussed. Plaintiff fails to establish that any consideration was offered in exchange for the purported agreement to arbitrate claims.

*Bozek v. PNC Bank*, No. 20-cv-2875-JMY, 2020 WL 6581491, at *4 (E.D. Pa. Nov. 10, 2020) ("*Bozek I*").

award to file the agreement to arbitrate alongside his petition). [The plaintiff] failed to attach an arbitration agreement to his petition. He also failed to allege that the defendants discussed, negotiated, agreed to, or signed an arbitration agreement.

[The plaintiff's] demand letter (which was not attached to his petition) does not constitute a valid contract because the defendants did not agree to its terms, including the arbitration clause. Contrary to [the plaintiff's] argument, the defendants' failure to respond to his letter does not amount to their assent. *See Degenhardt v. Dillon Co.*, 543 Pa. 146, 669 A.2d 946, 950 (1996) ("The formation of a valid contract requires the mutual assent of the contracting parties."). The letter's statement about "tacit acquiescence" upon the defendants' silence does not allow [the plaintiff] to evade this essential requirement. Demand Letter, ECF No. 3-5 ¶¶ 40, 41. While silence can, in exceptional circumstances, constitute assent, "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." Restatement (Second) of Contracts § 69 (Am. L. Inst. 1981). Here, the defendants' lack of assent is clear from the circumstances, where the defendants were successful in their foreclosure action to recoup a mortgage debt that [the plaintiff] owed them before receiving the demand letter purporting to seek an alternative resolution.

*Id.* at *2. The Third Circuit then concluded that because there was no valid agreement to arbitrate, Judge Younge did not err in vacating the arbitration award. *See id.* at *3 (citing 9 U.S.C. § 10(a); 42 Pa. C.S. § 7321.24(a)(5)).

Although the instant case differs from *Bozek II* insofar as Bey has attached a purported agreement to arbitrate to the Motion and the plaintiff in *Bozek II* did not attach his demand letter to his motion, the result is the same. A party cannot create an enforceable agreement to arbitrate by merely sending a document mandating arbitration to another party and claiming that the failure to respond, even when the document states that the failure to respond will constitute assent, constitutes a "tacit acquiescence" to arbitration. *See id.* at *2. Yet, that is precisely what Bey and AAMS are attempting to do here. There is nothing in the record before this court showing that Fidelity accepted the arbitration terms as altered by Bey. Since Fidelity's purported "tacit acquiescence" to arbitrate is insufficient to create a valid agreement to arbitrate between Fidelity

and Bey, there is no valid agreement to arbitrate, and the court intends to deny Bey's motion to confirm the purported arbitration award. *See Bozek*, 2021 WL 4240359, at \*2–3.

Although this determination would potentially resolve the matter, this court will further elaborate on the frivolous nature of Bey and AAMS's actions. It is apparent in the Motion that Bey and AAMS are associated with what has been called the American Moorish and Sovereign Citizen movements. AAMS demonstrates its association through the purported certification of the arbitration award, which purports to look like an official document affiliated with Morocco but is anything but official. The references and alleged association to Morocco are what link AAMS to the American Moorish movement. *See, e.g.*, *Zahir v. McKeefery*, Civ. A. No. PX-19-1271, 2019 WL 1980352, at \*w (D. Md. May 3, 2019) (rejecting plaintiff's argument of non-citizen status and describing language used linking plaintiff and Treaty of Morocco as "parrot[ing] the language of the beliefs and rhetoric espoused by the 'flesh and blood,' American Moorish, and Sovereign Citizen movements, all of which have been uniformly rejected as legally frivolous by this and other courts across the country"); *Maryland v. Ghazi-El*, Crim. A. No. RDB-16-207, 2016 WL 2736183, at \*2 (D. Md. May 11, 2016) ("Courts have consistently recognized that...the Moorish American Nation...[is a] notorious organization[ ] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws." (alterations in original) (citation and internal quotation marks omitted)); *El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 539–47 (D.N.J. 2011) (describing background and aspects of Moorish American and Sovereign Citizen movements). Overall, the legitimacy of the purported arbitration award by AAMS is highly doubtful. *See Elfar v. Wilmington Trust, N.A.*, No. 2:20-mc-273-TLN-KJN PS, 2020 WL 7074609, at \*3 (E.D. Cal. Dec. 3, 2020) ("Petitioner has not shown that any valid arbitration agreement

exists between himself and respondents, and the undersigned strongly doubts the legitimacy of the ensuing arbitration award [issued by an AAMS arbitrator named Ava Steele, located in Homewood, Illinois] which mostly parrots petitioner's bogus legal theories."), *report and recommendation adopted by*, 2021 WL 1700778 (E.D. Cal. Feb. 11, 2021); *see also Decormier v. Nationstar Servicers, LLC*, No. 1:20-cv-62-DAD-JLT, 2020 WL 5989180, at *1–2 (E.D. Cal. Oct. 9, 2020) (approving and adopting magistrate judge's report recommending dismissal of *pro se* plaintiff's action to enforce purported arbitration award because it was "based on a fraudulent attempt to extract money from defendants using false and fraudulent arbitration awards"); *Magee v. Nationstar Mortg., LLC*, No. 5:19-MC-17-H, 2020 WL 1188445, at *1 (N.D. Tex. Mar. 11, 2020) (explaining that numerous district courts had recently repudiated arbitration awards entered by entity named Sitcomm, were skeptical that Sitcomm was "valid arbitration entity," and concerned that "Sitcomm and its associates have engaged in a far-reaching, fraudulent arbitration scheme"). This doubt would preclude this court from taking any action that would legitimize AAMS's ability to enter arbitration awards.

### III.   CONCLUSION

For the reasons discussed above, it neither appears that a valid agreement to arbitrate before AAMS exists between Bey and Fidelity nor that the arbitration award issued by AAMS is legitimate and confirmable.[20] Nevertheless, the court will provide Bey with an opportunity to address these issues if he can do so. Accordingly, the court will enter an order upon Bey to show

---

[20] As an aside, while it is unlawful and imprudent to do what Bey and AAMS did in this case, they may have slightly overreached by manufacturing an arbitration award that, if Bey were to somehow collect on it, would have immediately made him one of the wealthiest people in the world. *See World's Billionaires List: The Richest in 2022*, Forbes, https://forbes.com/billionaires (last visited March 13, 2023) (indicating that 25th wealthiest person in the world had net worth of $50 billion).

cause why the court should not deny the Motion and vacate the purported arbitration award from

AAMS.[21]

    The court will enter a separate order.[22]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[21] Regarding the vacating of the award under the FAA, the court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Here, for the same reasons articulated by Judge Young in *Bozek I*, the purported arbitration award entered by AAMS

> fails to pass muster under 9 U.S.C. § 10(a). . . . [T]he record fails to demonstrate the existence of any "contract" or agreement to arbitrate between the parties which would support the purported Arbitration Award. Without such an underlying agreement or application of such a contract, the Court is under no obligation to provide any deference to the purported arbitrator. *See*[] 9 U.S.C. §§ 2, 10. Absent an agreement between the parties to be bound by arbitration, the arbiter necessarily "exceeds [his] powers" because he lacks any power to bind the parties by arbitration.

*Bozek I* at *5.

    In addition, whether the arbitration award is viewed as an award through statutory arbitration or common law arbitration under Pennsylvania's Uniform Arbitration Act, 42 Pa. C.S. §§ 7301–62, vacating the award would be proper because (1) if the statutory arbitration provisions apply: (a) the arbitrator exceeded their powers; (b) the award was procured by fraud; (c) there was no valid agreement to arbitrate; and (d) it is questionable that proper notice was provided to Fidelity; or (2) if the common law arbitration provisions apply: fraud and misconduct caused the entry of an unconscionable award. *See* 42 Pa. C.S. § 7321.24 (providing that court shall vacate arbitration award if, *inter alia*: "(1) the award was procured by corruption, fraud or other undue means; . . . (4) an arbitrator exceeded the arbitrator's powers; (5) there was no agreement to arbitrate . . .; and (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 7321.10 (relating to initiation of arbitration) so as to prejudice substantially the rights of a party to the arbitration proceeding"); 42 Pa. C.S. § 7341 ("The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration), A.1 (relating to revised statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." (footnote omitted)).

[22] This order will provide Bey with more instructions on the procedure for him to attempt to show cause in this case.